And it looks like we are ready to proceed in the next case. This is Rheal v. Amazon. Carlos Nunez-Vivas is here for the appellant, Rheal, and Drew Hanson is here for appellee, Amazon. And Mr. Nunez-Vivas, you may proceed. Your Honor, good morning. You may proceed to the court. Now, this case is here on an order granting infringement. We're having a hard time hearing you, Mr. Nunez. Oh, is that better? Yes, that's better. Okay. We are here on an order that granted summary judgment on a trademark infringement case involving a reverse confusion. Now, although the order does mention the correct standard of summary judgment, it's reminiscent of a judgment after a bench trial based on paper submissions. As an example, we have a lot of heuristic factors on the Freeling case in this court that are considered in a trademark infringement case on likelihood of confusion. As to the similarity of the marks, for example, one just needs to hear the words, fire TV. They sound exactly the same. They're slightly different than I or in a Y. In the case of DreamWorks in the Ninth Circuit, the court held that a fact finder reasonably could find insignificant such a difference. The similarities in this case are stronger than those in DreamWorks. But we do not need to look at the Ninth Circuit. We have a case right here in this circuit decided less than two years ago, in May of 2019. That's the PlayNation PlaySystems case, 924F3-1159. The court there upheld a jury finding that Gorilla Playset's name and the Gorilla Gym name are similar, even though visual presentation colors and font are different, and the gorillas were in different areas and positions in the marks. That case alone shows that the errors are committed by the district court. The district court really made a finding of fact adverse to the non-moving party, a real. A reasonable juror, as was found in the PlayStation case, could find that the marks are similar and weigh this factor in favor of real. Then we can go to the main factor. That's the strength of the mark, which is one of the most important factors in a likelihood of confusion case, and which involves the issue of reverse confusion. In this case, the undisputed fact, it was undisputed, and it was mentioned by the district court, that the marked Fire TV is strong and distinct. It is entitled to the highest protection. That alone, that finding alone, was enough to weigh that factor in favor of real. But the district court went on and made an improper finding of fact. It said that the house mark of Amazon, wrong that it is, mitigated that likelihood of confusion. Well, that goes against the cases in reverse confusion. Isn't that isn't the correct test for that? The focus on commercial screen. It's actually on the junior user on the house mark, right? It isn't isn't in essence what the trial court did in that case. In this case, it was a instead of doing a reverse confusion test. She did a forward. That's exactly correct. That's exactly it. Because that finding is on forward. In fact, she cited a forward confusion case. Because the reverse confusion cases in the other circuits, they, if you have a strong housemark, which the court noted it was Amazon, and you put it next to the infringing mark. What you're doing is aggravating that likelihood of confusion on a strong and distinct mark. This is one of the most important factors in the likelihood of confusion analysis. I was just going to say I so I I agree with a lot of what you're saying. And so I would kind of like you to skip to what I see is Amazon's main point and perhaps the strongest thing that weighs in their favor. And that is the district court's evaluation on the use of the mark in commerce. And so the district court said, I think, fairly reasonably. Well, we have one mark that's used exclusively with a hardcore porn website. And we have another mark that's used very much in a different way. And it's unlikely, based on the use of commerce, that a consumer would confuse the two. So I see that as Amazon's strongest argument. So I'd like you to address that. I will. And that's one. It's not one of the strong that the main important factors in the likelihood of confusion. But I will address that because it is important because we have to consider what the content is apart from what the mark is representing. The mark is representing a platform that streams movies to your home. Ask the platform. It is streaming content that belongs to third parties, not to Amazon and not to Reel. So the difference in content is not the relevant part. It's the platform that's delivering that content to your home that is relevant. And it's the same. It's using the same name, Fire TV. And so when you look at the presentation in commerce, it is a presentation of a platform called Fire TV that's delivering movies to your home. Now, there is no doubt that the content is different. Absolutely. But it is also complimentary. It is the evidence. Doesn't Amazon's platform also do some software for it? That's correct. It has it. In fact, that was evidence. And, in fact, when you look at the presentation in the page that was in evidence, Amazon has its Fire TV next to some photographic material. Now, here's why. Because the evidence showed that it actually kind of customizes the site to the customer. So if a customer is looking for pornography or adult content in Amazon's website, then Amazon, when that user comes on, it shows that kind of material on the website and also an ad banner for Fire TV. But what the district court did was shrug that off. It said, well, the fact is it also has some mainstream content in it. So it has some adult content, but it also has mainstream content, and Reel's website doesn't. But that just goes to show if Amazon has mainstream content next to adult content, it shows that they're complimentary. They go hand in hand. That was the whole point, that these products are the content itself is complimentary. The platform and the delivery is the same, but even the content is complimentary. Even, in fact, the expert of Amazon admitted, admitted, yes, look, customers who buy mainstream content are there's an overlap. It's pretty much the same as they buy adult content. And that's just common sense. But the court, again, brushes that aside as irrelevant. So if a customer is looking for pornography content and they go to, are they able to get it from Amazon, thinking that it's Fry TV? What they get, Your Honor, is soft adult content. Amazon doesn't have, it doesn't seem to have the hardcore adult content. However, as in DreamWorks, DreamWorks is a very interesting case because the court said, you know, that slight variation in the name, that one letter difference? It could easily be construed as the same company putting out the same product, but under a different division. And that's exactly what this is about. It is still, it can be put out by the same company. This is the evidence that companies do put out adult content and the mainstream content. They do it, of course, the adult content is usually separated. Sort of like if we remember the brick and mortar blockbuster, you know, where they had movies, mainstream movies, but then the adult content movie was like in a separate section to avoid minors from going in. It's very similar. It shows that they're put out by the same source. And that's the test. Can I ask you a question? And I'm going to ask this to both of you. Can you address to me what the standard should be for intent in adopting a reverse confusion case? The factor of intent? Yeah, intent, Your Honor. In this case, it goes to the fact that Amazon conceded. That it was well aware of the name Fire TV when it decided on it. It simply, what it did was it bought a lot of ads, a lot of space for searches. And basically what it did, it was removed Fire TV with a Y from the search engine. It just went lower, way lower. And Fire TV dominated. Time is up. I would like to continue if I may. Right. So that intent in the reverse confusion still applies because it is showing that there was an intentional. But do you, I guess my question is, and this is going to go to both of you, is your, is the intent factor, should it be that Amazon had actual knowledge of the mark? You had actual knowledge of the mark when it decided to infringe on it. But should that be the standard that we have? In the reverse confusion case, Your Honor, it goes to the junior user's intent. So, yeah, because it is, you know, it's reverse confusion and kind of some of these things are flipped. When you're dealing with the junior user instead of the senior user. In forward confusion cases, you focus more on the senior user. In reverse confusion, you're focusing more on the junior user, which is the big one. It is the strongest party because the idea is that you're saturating the market in the reverse confusion. Thank you. Thank you. Thank you, Mr. Yes. And we'll hear from Mr. Hanson. Thank you, Your Honors. And may it please the court. Drew Hanson for the appellee Amazon. This court has recognized several times that likelihood of confusion can be decided in a defendant's favor on summary judgment with very much the same type of approach that the district court used here. Contrary to my. The court's prior cases have gone through the factors, evaluated the evidence, and decided whether there was. It could raise a disputed issue of material facts. And that's true, even when this court has found that several factors play in the plane. So, in the Tana versus Don Tana case, this court affirmed summary judgment for the defendant despite finding, quote, indeed, it's similar. And, quote, the undisputed. Similarly, and welding services were found three factors. There was, quote, undisputed services. So, two federal judges have looked at this report and concluded this is one of these. I'm having trouble hearing you, Mr. I'm sorry. I apologize. Is this any better? Yes. Okay. I will lean forward. Thank you for seeing my face a little bit. That's better for us. Thank you. Okay. Thank you. I appreciate it. Let me use this lean forward break to ask you a question. I'll lean forward as well. Yes, sir. So, one error that it seems like the district court made here that we've already talked about is with this housemark issue. What do you say about the way the district court evaluated the housemark? Yeah. So, I just, I mean, it will not surprise the court. The district court looked at reverse confusion cases without housemarks. And the district court said, look, these other reverse confusion cases are either identical marks or the court, which is not the case here, right? I mean, we'll go on to the similarity of marks in a second, but, like, put that aside. They're not identical. Or there are cases where the appellate court just said, look, the district court didn't even think of this. They didn't think of this. Well, here the district court did think of it and said, in a world where the Amazon branding is around Amazon product, whether that's part of the name of the product, Amazon TV, or on Amazon's website, in an Amazon saturated environment, that's going to dispel confusion. It's going to lead people to understand where the Amazon product is. But that's the opposite test in a reverse confusion, because the housemark in a reverse confusion is, the goal is to cause confusion. And the housemark does that because the assumption that it goes to even where the customer, where you have customers who called in or tweeted to Fry TV saying, hey, did you guys merge with Amazon? So, I mean, clearly the housemark does that. So that level of confusion, and that's why there's a distinction between forward confusion cases versus a reverse confusion case, because the parties are in essence switched in terms of how you look at the case. Absolutely with you on the difference, right? In reels theory, you encounter reels, FYR TV mark in commerce on reels website, and you think, hmm, this must be Amazon must be the source affiliate or sponsor. That's why the housemark still weighs in Amazon's favor on reverse confusion. You don't see all that Amazon housemark branding on reels website, the way that you do see it on an Amazon product on Amazon website. And so, and I mean, so with that, I mean, the housemark, I think the district court analyzed in reverse confusion cases, applying reverse confusion cases and applied correctly. But as I mean, as the court noted, this is like, again, whatever the court does with one or two or as in welding services, even three of actors. It's an interesting case because we actually agree among the parties on the legal. The legal standard is not some amount of confusion, maybe sometimes the legal standard is confusion among an appreciable number of ordinarily prudent purchase. Because in terms of the actual confusion, because I'm not sure that that is the correct standard that we have in the 11th Circuit, because the 11th Circuit standard seems to be even a small level of evidence. And so how do we deal with that? I mean, are you suggesting that the parties can stipulate to what the law is in the 11th Circuit and we should disregard our precedent? Of course not, Your Honor. This court has analyzed the actual confusion factor in a way that I'll get to in a moment. But just what I was referring to is the overall test for a trademark infringement case, namely that it is a likelihood of confusion from an appreciable number of ordinarily prudent purchase. That's from the custom manufacturing case. That's 508F3rd at 651, quoting an Eastern District of New York case. But let's get to the court's question about the standard for actual confusion evidence and what counts as such evidence to weigh in the plaintiff's favor. So whatever the number of instances is, this court has never drawn a bracket for number of instances. Well, I guess that's a good entry for my question, which is how many would have been sufficient in your view? Because I counted a certain amount and, you know, the evidence seemed to say one is I plan to buy the new Amazon Fire TV box. Although, you know, maybe they'll bring some more Fire TV, some more customers and maybe a domain name sale or power to you. Will this Amazon streaming device have a private channel installation of Fire TV in the near future? And then the other customer tweeted, you guys just merged with Amazon. So how many is enough? And I guess the other question is, it seems to me that the trial court judge in essence made a credibility determination, which is not appropriate. I mean, because under our existing case law, you know, any evidence, I mean, there actually is evidence that there was some confusion. So is that evidence sufficient? And should that go to a jury as opposed to the trial court judge making credibility determination? Your Honor, thank you. So to answer the first question about number of instances, much of what the court read with respect is not confusion as to source affiliation or sponsorship, which is trademark confusion. I mean, the people who are writing in clearly know there's a difference between the Amazon thing and the Fire TV thing, and they're making remarks about that. The one that real rests on to get to the court's second point, which is the only one that they raised in their briefing that they think is indicative of that confusion, is this one caller who calls in and says, can I access FYRE TV, FYRE, and also can I access Netflix? So similarly, the confusion is about confusion of source affiliation or sponsorship. There's no indication that the caller thinks, and the court can read the transcript for itself, it's a court's de novo review, that the caller thinks that Amazon is the source, affiliate, or sponsor of Reel's product. So now if you go, I want to get back to what, I mean, your colleague noted as one of Amazon's strongest points, which is the dissimilarity of the marks as they appear in commerce. And that, of course, is the test. You don't look at the marks as they appear on the TV. You look at the marks as they are actually used in commerce. And here, if the court wishes to look at the under seal material, it is immediately and obviously clear why they are different. I mean, I'm looking at them right now. I mean, the reality, though, is that, to me, they're very similar. But because the TV is the same in both, and obviously there's case law, that's a generic thing, so we don't really look at that. But in terms of the fire, the only distinction really is the use, the different use of what is spelled with an I and what is spelled with a Y. And there's cases that say that just that small level of spelling difference still is a reverse confusion. It still satisfies that element. So I understand what the trial court judge did, but I'm not sure that that is not necessarily dispositive. No, I appreciate that, Your Honor. And so what the trial court also noted following this court's precedent is you don't just look at the marks themselves. You look at their commercial setting. I mean, that's this court in Amstar, quoting the restatement of torts, quote, the setting in which a designation is used affects the appearance and colors the impression conveyed by it. So you look then at where Reels Mark appeared. The only way you can become an FYRT Reels Fire TV customer is by going to the website. There's no other way to do it. You have to sign up for an account in your barrage by a lot of material that is very different. And that's not just lawyer argument. I mean, that's Reels own expert. Reels own expert was asked if an ordinary consumer would be likely to confuse Reels hardcore pornographic website with a mainstream consumer site. And she answered, quote, I agree that they would not confuse the two, close quote. That's on page seven of Amazon's brief. That's not me talking. That is their own expert. So compare that. So compare that to where Amazon. So, I mean, you know, I encounter the Amazon mark. Right. So, I mean, you've got fire TV with a why. The only way to get that is to go to a specific website and look for it. And it's a hardcore porn website. Where is where would a consumer encounter the fire with an eye? Consumer would encounter. So great question. You can buy the Amazon fire TV at Amazon dot com at Best Buy at Staples, none of which are places where you can buy Reels product. Similarly, from an advertising perspective, Amazon advertises its product on television, on the Amazon website and in magazines, none of which are places that Reel advertise. So that's where those two factors, right? The similarity of advertising methods and the similar the similarity of sales channels, retail outlets matter and way quite clearly. So we can so we can continue, I think, touring through the factors. If we look at let's talk a little bit about the similarity of the product. Right. Like the idea that these both involve streaming video. Right. They're both platforms that stream video. This this is not a sufficient basis on its own for a jury to find confusion. I mean, look back at the tonic is they're both restaurants. They're both. Let's go back to that. I don't think you really answered my question. I apologize. The Ninth Circuit has suggested that evidence of actual confusion, any evidence enough to satisfy to escape summary judgment. And this court in caliber cited that opinion and said, quote, the quantum of evidence needed to show actual confusion is relatively small. So, again, Reel has shown some evidence of actual confusion. So how many is sufficient in your view? Because, again, they have met that burden. They show some evidence of actual confusion. So why is that not enough? And why should the district court judge have ignored that evidence and made a credibility determination that did not meet that standard for actual? Thank you, Your Honor. So three quick responses. First off, this court has said in Amstar, for example, that even a couple instances of actual confusion. I mean, confusion has source affiliation or sponsorship. So two inquiries about a relationship, a misaddressed letter are isolated instances. Right. When this court goes, it holds that the instances in caliber way the other way. That's because these are instances of actual confusion involving a large portion of caliber's business. Caliber is like two. So here's here's my problem with that. Amstar was a post trial case. There was a trial in Amstar and caliber. It was a motion for summary judgment case. Right. So you're citing a. I mean, you know, look, you may win this case if it goes to trial. And I think if you did, we'd affirm. But there doesn't seem to be the same standard being applied there. Absolutely. I mean, correct on the procedural difference. But when the court when this court has been evaluating, OK, so how many instances weigh in favor? It is cited cases from all sorts. So just like in this particular one. Right. The caliber case, there were two customers that comprised a large portion of the company's business. Well, that's different from here. We have maybe sixty five thousand consumer. I'm sorry. OK, no, no. We have maybe sixty five thousand inquiries about the Amazon Fire TV. Realize tens of thousands of customers. We have only this one call that real argues demonstrates confusion. We have a bunch of stuff that the court has noted that doesn't go to confusion of source affiliation or sponsorship. And the way the court, this court has tended, it has explained that I think this was in the statement. It's you have to look at the degree of. Right. And the kind of people confused. Like is the degree of confusion. Is there confusion as the source of affiliation or sponsorship? And who are the kinds of people? And that's in this court. I don't believe it's ever held that some instances of actual confusion, even grant that this is actual confusion. It's enough to send a case for trial when you have the remaining factors, the similarity of marks, the retail outlets, the sales outlets, the customer base, the advertising methods and so on weighing in Amazon's paper. And remember, the underlying facts that supported summary judgment are not disputed. I mean, there is a list of undisputed facts in the district court's opinion that real did not. I think Mr. Hansen, I have another question. If you would address this in caliber cited several prior 11th Circuit cases to support the proposition that two factors, two of the seven factors in the seven factor test that support a likelihood of confusion. And in that case, the court said that the two most important factors are actual confusion and the strength of the mark. And if my understanding is correct, you pretty much can see the strength of the bar supports real. All right. No, Your Honor. Respectfully, we we don't disagree that there is conceptual strength of the marks. We do disagree that the strength of the mark weighs in real favor because of the use of the Amazon house for the Amazon brand. And we also we also know we don't. I'm sorry. I'm out of time. Oh, you can continue answering my question. No, thank you, Your Honor. No, we we disagree about that because we do think the district court evaluating reverse confusion case law correctly noted just on this factual context. If you have a bunch of Amazon branding on an Amazon product and you don't see that branding to the court's point about reverse confusion on the fire TV site, you don't see that Amazon brand. You don't see the Amazon housemark. You're used to seeing an Amazon housemark around an Amazon product. When you don't see that on both sides that dispels rather than increase the likelihood. Thank you, Mr. Hansen and Mr. Nunez, you preserve some time for rebuttal. You're muted, Mr. Nunez. You know, we were told that at least one person does that starts talking without immunity themselves. I would like to answer a question that was presented, which is Lagoa. As to how many. And we only need to look at the case again that was decided less than two years ago. And that's the play nation play system. In that case, there were only two instances of actual confusion. And the court said that's enough the way that factor in favor of the non-infringing party. In this case, it would be real. And what happened in that case is that the instance was somebody called the infringing party. That's the same thing that happened here. The Amazon's own witness. Corporate representative admitted that confused customer would call Amazon about fire TV with a wife. And that's exactly what happened. And that's exactly what happened. We found that Amazon search only found that instance because he had been escalated to a supervisor because the customer representative was trying to figure out how to access fire TV with a wife with Amazon. And so we don't know if there were others because the search that Amazon conducted wouldn't catch those. But we have that and then we have the tweet and we have others, but we actually have more than what play nation required. And then there's another there's another point. There was there was a comment made by just great pressure about where on reels website would you see fire TV with a with an eye. That's assuming like in DreamWorks that the customer is that perceptive in noticing that slight variation in one letter, a Y or an I. And the other thing is we look at play nation again. The gorilla set. The difference was gorilla play sets and gorilla gym. When you look at them, they're way more different than when you look at the comparison. And so you don't find you don't find gorilla play set in gorilla gym. Yeah, let me let me just push back on that a little bit, though, because I think I think that we was Judge Wilson's opinion in that case. Those those were products that were both sold in the same stores. Right. I mean, they were both products for, I think, children to play with. And so I just it just seems somewhat maybe very different here where there is no overlap. You know, I'm not looking for something and finding the other. Right. And that's really what I think the district court was saying is that it's hard to see where a consumer in commerce in the marketplace is confused. Your Honor, that assumes that somebody who acts as a real buyer TV never acts as Amazon. The idea is that when you have a junior user that is using the infringing mark in a reverse confusion case and they are saturating the market, they are advertising, they're spending eye popping numbers in advertising. The customer will see the Amazon mark next to the fire TV. It is that association that we're dealing in likelihood of confusion, that association between that mark, the stronghouse mark of Amazon with the infringing mark. And I guess here's here's I want you to be able to answer this, because I think this goes to to my thinking about the cases is in a reverse confusion case. How is the senior holder, the senior? How are you injured? How is your client injured? What is the thing that happens to you that is bad by the junior user taking your mark? That is actually addressed in the case law. Your Honor, the injury to the senior user is the loss of control of your own mark. Now you have the big guy controlling how your mark is used. Let's say real would have liked to go into mainstream content. Well, you know, it's going to have a difficult time doing that when there's a mammoth company that is controlling that market and associating the mark with its own name. And so you lose control of your own brand. If Amazon, for example, eventually destroys the brand for some reason, the Amazon name doesn't become a good name. Then it tarnishes the brand. It tarnishes that infringing that the mark that is being protected. Remember, this mark is entitled to the highest protection. And I think my time is up. Right. I think we have your arguments, counsel. Thank you very much. And that concludes our docket for today. And this court will be in recess until nine o'clock tomorrow morning. Thank you. Thank you.